# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN W. BONK and DONNA M. BONK, Husband and Wife,<br><br>    Plaintiffs,<br><br>    v.<br><br>AMERICAN STATES INSURANCE COMPANY,<br><br>    Defendant. | NO. 3:18-CV-2417<br><br>(JUDGE CAPUTO) |

## MEMORANDUM

Presently before me is the Motion for Summary Judgment (Doc. 16) filed by Defendant American States Insurance Company ("American States"). In the matter *sub judice*, Plaintiff John Bonk ("Bonk") claims that American States breached the terms of an automobile insurance policy by denying payment on his claim for underinsured motorist benefits following a motor vehicle accident with an underinsured third-party tortfeasor. American States argues here that in executing a release with the third-party tortfeasor, Bonk released all claims, including those asserted against it in this litigation. Because Bonk did not discharge American States under the language of the release, the motion for summary judgment will be denied.

## I. Background

On December 15, 2014, Bonk was injured in a motor vehicle accident on Route 11 in Plymouth, Pennsylvania when he was a passenger in a truck operated by his brother, Alfred Bonk. (*See* Bonk Dep., 33:5-34:8). His brother's truck was hit from behind at a red light. (*See id*. at 34:6-12). That accident was caused by the negligent acts and omissions of Yasmin Pascual ("Pascual"). (*See* Def.'s SMF, ¶ 8).[1] At the

---

[1] Local Rule 56.1 requires that a motion for summary judgment be supported "by a separate, short, and concise statement of the material facts, in numbered

time of the accident, Alfred Bonk's vehicle was insured under a motor vehicle insurance policy (the "Policy") issued by American States, which included underinsured motorist benefits. (*See* Def.'s Ans., ¶ 6).

Bonk filed a claim against Pascual for responsibility for the accident, and that claim was settled for $25,000.00. (*See* Bonk Dep., 73:16-74:14). As part of the resolution of that claim, Bonk and his wife signed a "Release of All Claims" (the "Release"). (*See id*. at 75:1-77:1; *see also* Def.'s Ans., Ex. "2"). When he signed the Release, Bonk was represented by counsel. (*See* Bonk Dep., 77:2-11). While he is unable to recall whether he had any questions about the Release, Bonk indicated that if he did he would have asked his counsel. (*See id*. at 78:1-8). Bonk believes he probably read the Release before signing it, but he could not recall the date the Release was signed or where he was located when he signed the Release. (*See id*. at 75:22-76:23).

The Release provides, in relevant part:

> This Indenture Witnesseth that we in consideration of the sum of Twenty Five Thousand and 00/00 dollars ($25,000), receipt whereof is hereby acknowledged, do hereby for our heirs, personal representatives and assign, release and forever discharge Yasmin Pascual and any other person, firm or corporation charged or chargeable with responsibility of liability, their heirs, representative or assigns, form [sic] any and all claims, demands, damages, costs, expenses, loss of service, action and causes of action arising from any act or occurrence up to the present time, and particularly on account of all personal injury, disability, property damage, loss or damage of any kind sustained or that we may

---

paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. Pa. L.R. 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issue for trial. *See id*. Rather than file a response to American States' factual statement, Bonk submitted his own statement of undisputed facts. (*See* Doc. 18, *generally*). Bonk's failure to comply with the Local Rules is of no moment, though, given that he "adopts the Statement of Relevant Facts of Defendant American's Brief," (Doc. 17, 1), which includes the facts set forth in American States' factual statement.

>  hereafter sustain in consequence of an accident that occurred on or about the 15th day of December, 2014, at or near East Main Street, Plymouth Boro, PA.

(Def.'s Ans., Ex. "2").

After resolving the claim with Pascual, Bonk and his wife Donna commenced this action by filing a two-Count Complaint for breach of contract and loss of consortium against American States and SAFECO Insurance in the Court of Common Pleas of Luzerne County, Pennsylvania on November 14, 2018. (*See* Doc. 1, Ex. "A", *generally*). The action was removed to this Court on December 21, 2018, (*see* Doc. 1, *generally*), and the parties subsequently stipulated to proceeding with American States as the lone Defendant in this case. (*See* Doc. 5, *generally*). Donna Bonk also voluntarily dismissed her claim against American States. (*See* Docs. 14-15, *generally*).

On August 16, 2019, American States moved for summary judgment based on its view that the release executed by Bonk discharged the claims against it as well. (*See* Docs. 16-17, *generally*). Bonk opposes the motion, arguing that the release was specific to Pascual, American States was not privy to the cause of action or settlement, and that the language of the Release only contemplates individuals or entities affiliated with Pascual. (*See* Doc. 19, 4-5). American States replies that the Release is clear, it does not limit or narrow the parties that are released, and the Release encompasses Bonk's UIM claim against it. (*See* Doc. 20, *generally*). The motion for summary judgment is thus fully briefed and ripe for disposition.

## II. Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A court may grant a motion for summary judgment if, after it considers all probative materials of record, with inferences drawn in favor of the non-moving party, the court is satisfied that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law."

*Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 218 (3d Cir. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S. Ct. 2548, 2556, 91 L. Ed. 2d 265 (1986); *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000)). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law. A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)). "In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter . . . ." *American Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 587, 581 (3d Cir. 2009) (citing *Anderson*, 477 U.S. at 248-49, 106 S. Ct. 2505).

The moving party bears the initial burden to identify "specific portions of the record that establish the absence of a genuine issue of material fact." *Santini*, 795 F.3d at 416 (citing *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548, 2553). If this burden is satisfied by the movant, the burden then "shifts to the nonmoving party to go beyond the pleadings and 'come forward with specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)). The nonmovant's burden is not satisfied by "simply show[ing] that there is some metaphysical doubt as to the material facts." *Chavarriaga*, 806 F.3d at 218.

### III. Discussion

The instant motion raises a single issue: whether American States was included in the Release executed by Bonk.

"In Pennsylvania, it is well settled that the effect of a release is to be determined by the ordinary meaning of its language." *Taylor v. Solberg*, 778 A.2d 664, 667 (Pa. 2001) (citing *Republic Ins. Co. v. Paul Davis Sys. of Pittsburgh South, Inc.*, 670 A.2d 614, 615 (Pa. 1995); *Buttermore v. Aliquippa Hosp.*, 561 A.2d 733, 735 (Pa. 1989)). Releases are interpreted according to general contract principles. *See Harrity v. Med.*

*Coll. of Pennsylvania Hosp.*, 653 A.2d 5, 10 (Pa. Super. Ct. 1994) (citing *International Organization Master, Mates and Pilots of America, Local No. 2 v. International Organization Masters, Mates and Pilots of America*, 439 A.2d 621, 624 (Pa. 1981)).

> "[W]hen construing the effect and scope of a release, the court, as it does with all other contracts, must try to give effect to the intentions of the parties. Yet, the primary source of the court's understanding of the parties' intent must be the document itself. Thus, what a party now claims to have intended is not as important as the intent that we glean from a reading of the document itself. The parties' intent at the time of the signing as embodied in the ordinary meaning of the words of the document is our primary concern."

*Brown v. Cooke*, 707 A.2d 231, 233 (Pa. Super. Ct.1998) (quoting *Flatley by Flatley v. Penman*, 632 A.2d 1342, 1343-44 (Pa. Super. Ct. 1993) (internal citations omitted)); *see also Fortney v. Callenberger*, 801 A.2d 594, 597 (Pa. Super. Ct. 2002) ("The courts of Pennsylvania have traditionally determined the effect of a release using the ordinary meaning of its language and interpreted the release as covering only such matters as can fairly be said to have been within the contemplation of the parties when the release was given.").

It is also settled that when "parties to a release agree not to sue each other or anyone else for a given event," this "can provide a discharge of others . . . who have not contributed consideration for the release." *Republic Ins.*, 670 A.2d at 615. This is "true even if the language of the release is general, releasing, for example, 'any and all other persons' rather than specifically naming the persons released." *Taylor*, 778 A.2d at 667.

Turning to the Release, it reads, in pertinent part, that Bonk and his wife: "release[d] and forever discharge[d] Yasmin Pascual and any other person, firm or corporation charged or chargeable with responsibility of liability . . . form [sic] any and all claims, . . . action and causes of action arising from any act or occurrence up to the present time, and particularly on account of all . . . loss or damage of any kind sustained or that we may hereafter sustain in consequence of an accident . . . ." (Def.'s Ans., Ex. "2").

This language, says American States, releases the present underinsured motorist claim against it since "[t]he Release does not except, preserve, exclude, or otherwise carve out" the cause of action that is the subject of this litigation. (Doc. 17, 4-5). American States explains that all of the requirements necessary to find that the Release applies to it are met here because: (1) this litigation is a cause of action and suit against it: (2) the cause of action arose from an act or occurrence, *i.e.*, the underlying accident, Pascual's liability for it, and her having been underinsured at the time; (3) this matter seeks recovery for loss/damages sustained in consequence of the motor vehicle accident; and (4) "American States is a firm or corporation." (*Id*. at 4; *see also id*. at 7-8).

American States' argument as to the final point is flawed. It is not simply "any other . . . firm or corporation" released and discharged under the terms of the Release as American States says. (*See*, *e.g.*, Doc. 17, 8 ("He released not only the tortfeasor, but 'any other person, firm or corporation.'")). Instead, the Release applies to any other "firm or corporation charged or chargeable with responsibility of liability . . . ." (Def.'s Ans., Ex. "2"). Tellingly, while American States notes in its summary judgment submissions that it is a "firm or corporation," it does not explain how it is (or was) "charged or chargeable with responsibility of liability . . . ." (*See* Doc. 17, 4, 8).

The record is clear that American States was not, in fact, "chargeable with responsibility of liability . . ." here. Indeed, American States was not Pascual's insurer at the time of the accident. Rather, Pascual was insured by Allstate, which tendered Pascual's policy limits to Bonk. (*See* Doc. 16, Ex. "4"; Doc. 18, Ex. "3"). Thus, the pertinent Release language, *i.e.*, "firm or corporation charged or chargeable with responsibility of liability[,]" cannot be interpreted to include American States, an insurer that had no relationship with Pascual. Instead, that language applies to those

that could be held accountable for the accident.[2]

The case law cited by American States finding that a party can be released even when the party does not provide consideration for the release does not compel a contrary result. Critically, and quite obviously, these decisions are all dependent on the language of the release at issue. And, for reasons explained below, the language in the releases in those cases are all markedly different from the governing Release here.

First, American States points to the Pennsylvania Supreme Court's decision in *Buttermore*. *See Buttermore*, 561 A.2d at 734. There, the plaintiff was involved in an automobile accident with a third-party. *See id.* Following the accident, the plaintiff was taken to the defendant hospital for treatment. The plaintiff subsequently executed a release in settlement of his claim against the third-party, which stated, in pertinent part:

> I/We being of lawful age, for myself/ourselves, my/our heirs, administrators, executors, successors and assigns hereby remise, release, acquit and forever discharge Frances Moser, et al. His/her successors and assigns, and/or his, her, their, and each of their associates, heirs, executors and administrators and any and all other persons, associations and/or corporations, whether known or unknown, suspected or unsuspected, past, present and future claims, demands, damages, actions, third party actions, causes of action, or suits at law or in equity, indemnity of whatever nature, for or because of any matter or thing done, omitted or suffered to be done, on account of or arising from damage to property, bodily injury or death resulting or to result from an accident which occurred on or about the 3rd day of December, 1981 at or near Aliquippa, Pennsylvania for which I/We have

---

[2] The "chargeable with responsibility of liability" language has been found by one court to be ambiguous. *See Farmers Auto. Ins. Ass'n v. Kraemer*, 857 N.E.2d 691, 695 (Ill. App. Ct. 2006) ("The words any other . . . corporation charged or chargeable with responsibility of liability are general words limited by the specific identification of the tortfeasor, Teason. . . . The release is therefore ambiguous regarding whether Farmers, who was not a party to the release and who was not Teason's insurer, was a corporation chargeable with Teason's tortious liability and thereby released from its contractual liability to Kraemer pursuant to its policy of insurance issued to her.").

7

> claimed the said Frances Moser, et al. to be legally liable, but this release shall not be construed as an admission of such liability.

*Id*. The Plaintiff then filed a claim against the hospital and his treating doctors for their negligent treatment. *See id*. at 735. The Pennsylvania Supreme Court cited its prior precedent holding that "a release given to a particular individual and 'any and all other persons whether herein named or not' was applicable to all tort-feasors despite the fact they were not specifically named." *Id*. (quoting *Wolbach v. Fay*, 412 A.2d 487 (Pa. 1980) (internal alteration omitted)). Thus, finding "[t]he operative language contained in the release [to be] identical to that" in its precedent, the plaintiff had released his claim against the hospital and physicians. *See id*.

*Buttermore* is inapposite to the matter *sub judice*. Unlike the release in *Buttermore* that applied to "any and all other persons, associations, and/or corporations," *id*. at 734, the Release here, as detailed above, is limited to only "any other person, firm or corporation charged or chargeable with responsibility of liability . . . ." (Def.'s Ans., Ex. "2"). In short, there are material differences in the controlling language of the releases.

The same is true of the release in *Republic Insurance Co*. *See* 570 A.2d at 614. In that case, the insured's residence suffered storm damage, and PDS was hired to perform repairs. *See id*. PDS allegedly failed to take precautions to protect the remaining structure, which resulted in additional damage to the structure following a subsequent storm. *See id*. Republic, the insurer, paid for substantially all the damage, and then settled a subsequent suit with the insured and obtained a release. *See id*. at 615.

Republic, as subrogee of the insured, filed litigation against PDS, which claimed that the release Republic had obtained from the insured encompassed the claims against it. *See id*. The trial court agreed with PDS, but the Superior Court reversed, explaining that the release language "served only to release those persons who might reasonably be considered to be within the ambit of responsibility under the asserted

and released cause of action." *Id*. (internal quotation and citation omitted). Since the asserted and released cause of action was a contract claim against Republic, the Superior Court found the release was inapplicable to a tort claim against PDS. *See id*.

The Pennsylvania Supreme Court reversed, finding the release "clear, unambiguous, and broad in scope." *Id*. The release stated that the insureds:

> release, acquit, discharge and indemnify Republic Insurance Company, their underwriters and any and all other persons, firms, partnerships and corporations (hereinafter Released Parties) which are and might be claimed to be liable to their heirs, administrators, executors, successors and assigns from any and all actions, cause of action, claims, joinders and demands of whatsoever kind or nature as a result of those losses which occurred on May 23, 1988 and June 8, 1988, including, but not limited to, all matters which have been raised or which could have been raised, in the action filed by Releasor(s) at No. 97 of 1989, in the Court of Common Pleas of Allegheny County, Pennsylvania, Civil Division–Arbitration.

*Id*. The *Republic Insurance* Court reasoned that "[g]iven the language releasing 'all other persons' from 'any and all actions' of 'whatsoever kind or nature,' and the specification that the release is "not limited to" matters that were or could have been raised in the contract claim against Republic, the decision of the Superior Court that the release did not apply to tort claims against PDS was without basis. Indeed, it would be difficult to conceive of language more clear, pertinent, and all-inclusive." *Id*.

The facts and release at issue in *Republic Insurance* do not support a finding that American States was encompassed by the Release executed by Bonk. Notably, the Release in *Republic Insurance* covered "any and all other persons, firms, partnerships and corporations" which "might be claimed to be liable" from "any and all actions" of "whatsoever kind or nature" resulting from the identified storm damages, "including, but not limited to" the matters raised or could have been raised in the insureds' actions. *Republic Ins.*, 570 A.2d at 614. Losses incurred following the storm that were attributable to PSD's alleged negligence, as the Pennsylvania Supreme Court explained, clearly fell within the terms of the release. Here, though,

there is no similar basis to conclude that American States is "chargeable with responsibility of liability[.]" (Def.'s Ans., Ex. "2").

American States also points to the Superior Court's decision in *Ford Motor Co. v. Buseman*, 954 A.2d 580, 581 (Pa. Super. Ct. 2008). In *Buseman*, the estate of the decedent filed litigation in Pennsylvania state court against Ford Motor Company and a Ford dealer alleging that she died of injuries sustained when the vehicle she was riding in as a front seat passenger rolled over. *See id*. Prior to the commencement of the state court litigation, however, the estate resolved a wrongful death/survival action that had been brought in federal court against the driver of the vehicle. *See id*. When the federal case was settled, the estate filed two releases: one with the decedent's insurer and one with the driver's insurer. *See id*. The defendants in the state court action subsequently claimed that they were released from liability as a result of these two releases. *See id*. at 582. The trial court disagreed, but granted permission to file an interlocutory appeal. *See id*.

The Superior Court reversed. *See id*. at 587. It observed that the first release applied to the driver and "and all other persons, firms or corporations of and from any and every claim, demand, right or cause of action, of whatever kind of nature, on account of or in any way growing out of any and all personal injuries and consequences thereof . . . ." *Id*. at 585. The second release similarly applied to the driver and "all other persons, firms or corporations liable or, who might be, claimed to be liable, none of whom admit any liability to the undersigned . . . ." *Id*. These releases, said the Superior Court, were "unambiguous, clear, [and] broad in scope[.]" *Id*. The *Buseman* court looked to the Pennsylvania's Supreme Court's decision in *Buttermore* which had construed similar release language and held that "the release discharged others who had not contributed consideration toward the release, and in fact extinguished claims against all tortfeasors." *Id*. As such, and finding an absence of fraud, accident, or mutual mistake, the estate was unable to recover from the defendants in the state court action. *See id*.

10

The releases at play in *Buseman* - and the parties claiming they were released therein - are unlike here. There, as quoted above, the estate released "all other persons, firms or corporations of and from any and every claim demand, right or cause of action, of whatever kind of nature," and "all other persons, firms or corporations liable or, who might be, claimed to be liable . . . from any and all claims . . . ." *Id*. at 587. Those releases were broad and unambiguously released claims against an alleged joint tortfeasor. That, for reasons explained before, stands in contrast to the Release language here, as well as the party claiming to be covered by its terms.

Finally, American States cites *Crisp v. Ace American Insurance Co.*, No. 150902953, 2017 Phila. Ct. Com. Pl. LEXIS 125, at *1 (Mar. 9, 2017). The plaintiff in *Crisp* was injured in a motor vehicle accident with a third-party during the course of her employment. *See id*. The plaintiff settled her claim with the third-party's insurer and signed a "General Release in Full of All Claims." *Id*. Pursuant to that release, the plaintiff agreed to release, *inter alia*, "any and all other persons or entities whatsoever . . . of and from any and all claims, liens, actions, causes of actions, demands, and/or rights, of whatever kind or nature which Releasor now has or which hereafter may accrue, on account of or in any way resulting" from the accident. *Id*. at *1-2 (alteration in original). She then filed a complaint in state court for underinsured motorist benefits against her employer's insurer, and the insurer moved for summary judgment on the ground that the claim against it was barred by the release. *See id*.

The Court of Common Pleas granted the motion. *See id*. Relying on the Pennsylvania Supreme Court's decisions in *Buttermore*, *Republic Insurance*, and *Taylor*, the *Crisp* court reiterated that "it is Pennsylvania law to enforce General Releases against all parties listed in the release, even when the party at issue is not listed by name and did not provide consideration in support of the Release." *Id*. at *6. Looking at the language of the release, the court found that it was "the law of the case and clearly encompass[ed] any claim against [the insurer]." *Id*. at *7.

The matter *sub judice* and *Crisp* both involve whether an insurer and/or the

11

insured's claims against it were released as a result of a settlement with a third-party underinsured motorist. But, the outcome in *Crisp* is of no moment here because the controlling issue in deciding whether the insurer was released is the language of the release under review. In that respect, the *Crisp* release has no bearing to that here. There, the plaintiff released "any and all other persons or entities *whatsoever*[.]" *Crisp*, 2017 Phila. Ct. Com. Pl. LEXIS 125, at *5 (emphasis added). The Release executed by Bonk, though, is much more restrictive and is limited to "any other . . . firm or corporation charged or chargeable with responsibility of liability . . . ." (Def.'s Ans., Ex. "2"). Had the instant Release not included such language - or contained language similar to that in *Crisp* - American States may well be correct that the underinsured motorist claim against it would have been released. But the fact is that the Release at issue is not so broadly written, and the ordinary meaning of the language in it does not apply to American States. *Crisp* is inapplicable to the present dispute.

In sum, while a release under Pennsylvania law can provide for the discharge of others, including those who have not provided consideration for it, the effect of a release is determined by the ordinary meaning of its language. The language of the Release reveals that it does not apply to American States, and the authority cited by American States does not compel a contrary result. Summary judgment in favor of American States is not warranted.

### IV. Conclusion

For the above stated reasons, American States' motion for summary judgment will be denied.

An appropriate order follows.

| | |
|---|---|
| October 1, 2019 <br> Date | /s/ A. Richard Caputo <br> A. Richard Caputo <br> United States District Judge |